# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERTO "BOBBY" RODRIGUEZ,

    Plaintiff,

    v.                                                              No. 19-cv-01178 WJ-SMV

DAVID O'REILLY,

    Defendant.

**<u>MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE
BASED ON LACK OF PERSONAL JURISDICTION</u>**

THIS MATTER comes before the Court upon Defendant's Rule 12(b)(2) Motion to Transfer or in the Alternative, Dismiss, filed January 13, 2020 **(Doc. 9).** Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and, therefore, is granted.

## BACKGROUND

This case involves a business dispute between Plaintiff Rodriguez ("Plaintiff" or "Rodriguez"), an employee of APC Construction ("APC") and Defendant O'Reilly ("Defendant" or "O'Reilly"), owner of Forge Fabrication Services ("Forge"). APC is owned by Keith Porta, who is Defendant's former business partner. APC is a civil contracting business and Forge provides both fabrication and electrical services for use in the oil and gas industry. Both APC and Forge are Louisiana companies; O'Reilly and Mr. Porta are residents of the State of Louisiana. Rodriguez is a resident of Lea County, New Mexico.

The business dispute started between Mr. Porta and O'Reilly as former business partners and led to the filing of a lawsuit on August 30, 2019 by O'Reilly and Forge in the United States

District Court for the Eastern District of Louisiana against Mr. Porta and APC. The complaint in that case, which is still pending, alleges fraudulent activities on the part of Rodriguez' boss, Mr. Porta. *See* Ex. 2 (Compl., *Forge Fabrication Serv., LLC, et al v. Keith O. Porta, et al.,* No. 19-12393 (E.D. La.) ("Louisiana lawsuit"). The Louisiana lawsuit also named a Minnesota-based CPA firm and a Delaware-based insurance broker who have both been dismissed from that case. After filing that lawsuit, O'Reilly sent letters through counsel to customers for whom he and Mr. Porta previously provided services, informing them of the nature of the dispute. Exs. 3, 4 & 5.

Plaintiff was not named as a party to the Louisiana lawsuit nor is he mentioned in the letters sent to customers. He filed this lawsuit in the 5th Judicial District Court, County of Lea, State of New Mexico on November 12, 2019 and Defendant removed the case to this federal court on December 16, 2019. The gist of the complaint is that O'Reilly directly interfered with APC's operations, customers and prospective customers by personally harming Plaintiff's reputation. Plaintiff alleges that on July 19, 2019, he was working for APC in Hobbs, New Mexico, and that O'Reilly telephoned Plaintiff that day and claimed that Keith Porta "did not hold up to his end of their deal" regarding payment for trucks belonging to O'Reilly. Compl., ¶9. The complaint alleges that O'Reilly retaliated against Rodriguez by defaming him to several parties and threatening to contact the Lea County Sheriff's department to have him, Rodriguez, and other APC employees arrested for grand theft auto. The complaint alleges three claims:

    Count I – Malicious Abuse of Process;
    Count II – Defamation; and
    Count III – Prima Facie Tort (in the alternative)

**DISCUSSION**

O'Reilly contends that this Court lacks personal jurisdiction over him and that the case should be dismissed or alternatively, that this case should be transferred pursuant to 28 U.S.C. §1631, which applies when a court cannot exercise personal jurisdiction over a defendant.

A motion to dismiss is an appropriate procedural vehicle for resolving personal jurisdiction and venue issues. *Albuquerque Facility, LLC v. Danielson*, 181 F. Supp. 3d 924, 929–30 (D.N.M. 2016) (citing Fed.R.Civ. P. 12(b)(2) & (3). Affidavits, depositions, answers to interrogatories, and similar evidentiary matter may be presented and are freely considered on a motion attacking jurisdiction. *Id.*

**I.     Personal Jurisdiction**

Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum, which in this case is New Mexico. *Benally v. Amon Carter Museum of Western Art,* 858 F.2d 618, 621 (10th Cir. 1988) (citations omitted). Plaintiff has the burden of establishing personal jurisdiction over Defendant. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).

Under New Mexico law, there is a three-part test to determine whether personal jurisdiction lies over non-residents. The Court must determine whether: (1) the defendant committed an act or omission specifically set forth in New Mexico's long-arm statute;[1] (2) the cause of action arises out of that act or omission; and (3) the defendant has sufficient minimum contacts to New Mexico to satisfy due process concerns. *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 132 N.M. 312, 318 (2002). The statute "extends the jurisdictional reach of

---

[1]  Section 38-1-16, N.M.S.A.1978 provides that a person who does any of the enumerated acts submits himself to the jurisdiction of the courts of this state as to any cause of action arising from:
(1) the transaction of any business within this state;  [and] . . .
(3) the commission of a tortious act within this state . . . .

New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 132 N.M. 312, 316, 48 P.3d 50 (2002); *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492–93 (10th Cir. 2012). The personal jurisdiction analysis, therefore, concerns only whether the exercise of personal jurisdiction offends due process. *Gray v. Acadia Healthcare Co., Inc.*, 408 F. Supp. 3d 1250, 1252 (D.N.M. 2019).

Due process requires that the defendant "purposefully established minimum contacts within the forum State" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

The minimum contacts requirement may be met by the court exercising either general or specific jurisdiction. General jurisdiction exists when the defendant's contacts with the forum state "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 904 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Gray v. Acadia Healthcare Co., Inc.*, 408 F. Supp. 3d 1250, 1253 (D.N.M. 2019). Courts may exercise specific jurisdiction in cases that "arise out of or relate" to those activities. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996).

However, both general and specific personal jurisdiction require a showing that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Alto Eldorado P-ship,* 138 N.M. 607 (Ct.App. 2005). This determination is made by balancing five factors: the burden on the defendant, New Mexico's interest, the plaintiff's interest, the interest in an efficient judicial system, and the interest in promoting public policy. *Zavala v. El Paso County*

*Hospital District*, 143 N.M. 36, 42, 172 P.3d 173, 179 (N.M.App., 2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

Defendant contends that this Court has neither general nor specific jurisdiction over Mr. O'Reilly.

A. General Jurisdiction is Absent

When the defendant has continuous and systematic general business contacts with the forum state, courts in that state may exercise general jurisdiction over the defendant. *See Purple Onion Foods, Inc. v. Blue Moose of Boulder*, 45 F.Supp.2d 1255 (D.N.M. 1999); *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 414-15 (1984).

O'Reilly notes that his domicile is in Louisiana and that he has had no contacts that can be considered "continuous and systematic" such that he can be considered at home in the forum state, which is New Mexico in this case. Plaintiff offers no evidence to the contrary so the Court finds that general jurisdiction is absent.

B. Specific Jurisdiction is Absent

Specific jurisdiction has a "two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co.*, 877 F.3d at 904 (quoting *Burger King Corp.*, 471 U.S. at 476-477). For there to be minimum contacts "the defendant must have 'purposefully directed its activities at residents of the forum state,' and . . . 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Id.* (citation omitted), cited in *Gray v. Acadia Healthcare Co., Inc.*, 408 F. Supp. 3d 1250, 1253 (D.N.M. 2019).

*1. Defendant's Conduct Not Purposefully Directed at Forum State*

Under this test, a plaintiff must establish "not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*." *Dudnikov v. Chalf & Vermilion Fine Arts,* 514 F.3d 1063, 1077 (10th Cir. 2008) (emphasis in original). This means that Plaintiff must demonstrate at a minimum, that Defendant's allegedly tortious activities were purposefully directed at the forum state, New Mexico, and not simply that they "indirectly" resulted in injury in New Mexico.

Plaintiff cannot meet this burden. The complaint alleges no facts showing that O'Reilly's conduct was purposefully directed at New Mexico based on alleged tortious activities by O'Reilly.

First, in Count I, Plaintiff alleges a Misuse of Process Claim in which he asserts that O'Reilly "engaged in the misuse of the legal process, directing the initiation of legal proceedings in Louisiana in the filing of a false and frivolous complaint against Porta and APC." Doc. 1 (Compl.), ¶29. The allegations relating to this theory are as follows:

- Defendant told Plaintiff that Mr. Porta had lied to him and that he (O'Reilly) "was coming to New Mexico on Sunday" to pick up the trucks. Defendant also allegedly told Plaintiff that he (O'Reilly) would contact the Lea County Sheriff's department to report the trucks as stolen and to have Plaintiff and APC employees who were in possession of the trucks arrested so that the trucks could be returned. *Id., ¶*10.

- After Mr. Porta's attorney (Robert Wynne) sent a Cease and Desist letter to O'Reilly, his attorney sent Mr. Wynne a letter threatening again that "if APC did not kowtow to the demands of O'Reilly that they would file a report with the Lea County Sheriff to report the trucks . . . as stolen causing Plaintiff and other APC employees to be arrested and the vehicles seized." *Id.*, ¶¶11-12.

The complaint does not state either that O'Reilly ever traveled to New Mexico or ever contacted the Lea County Sheriff.

Second, in Count II, Plaintiff asserts a claim for Defamation, alleging that Defendant contacted companies with whom Plaintiff had a professional relationship and that Defendant

6

threatened legal action if those companies continued to work with APC. Compl., ¶¶16, 17, 22. However, none of these companies are New Mexico entities. Defendant's Exhibits 3, 4 and 5 constitute the allegedly defamatory letters.[2] Exhibit 3 was sent by O'Reilly's Texas-based lawyer to a Texas-based company, Eagle Claw Midstream Ventures, LLC, on behalf of O'Reilly's Louisiana company, Forge. Exhibit 4 was sent by O'Reilly's attorney to Ecolab, a Minnesota-based company, again on behalf of Forge. Exhibit 5 is another such letter sent to a Texas-based company, Sabinal Energy, LLC. In each of the letters, Mr. Wynne informs the recipient that APC and Mr. Porta made misrepresentations about ownership about the equipment; that they "have intentionally breached" their obligations to Forge; and that they "have failed to remit any revenues to Forge. . . ." Docs. 9-4 at 1; 9-5 at 1; 9-6 at 1. There is no allegation that any of these foreign companies did any business in New Mexico, and even if they did, the letters are not sufficient to establish that O'Reilly's actions were expressly directed at New Mexico because none of them mention Rodriguez by name or even mentions New Mexico.

In Count III, Plaintiff alleges Prima Facie Tort (In the Alternative). This claim does not confer specific jurisdiction over O'Reilly because it is based on the "communications and actions" described in Counts I and II, which in themselves fail to confer specific jurisdiction.

Thus, based on the factual allegations, none of the allegedly tortious conduct by O'Reilly can be characterized as "expressly aimed" at New Mexico. O'Reilly's actions were not "purposefully directed" at New Mexico such that O'Reilly knew "that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. Defendant's dispute is with his former

---

[2] In his response, Plaintiff claims that O'Reilly "contacted New Mexico and West Texas Companies with whom Rodriguez has a reputation with, and with whom he conducts business." Doc. 1 at 8. However, the complaint states no facts suggesting that any of these companies were New Mexico-based companies. See, e.g., Doc. 1, ¶¶, 17, 18, 22. On the other hand, O'Reilly provides copies of these letters showing that these companies are not based in New Mexico.

business partner Mr. Porta, over alleged breaches of contracts executed in Louisiana, and has nothing to do with Rodriguez or anything in the forum state (New Mexico). Accordingly, Plaintiff has not satisfied this part of the specific jurisdiction test.

### 2. *Plaintiff's Claims Do Not "Arise Out Of" Defendant's Contacts with State*

To satisfy the specific jurisdiction test, Plaintiff must also show that Defendant's contacts "arise out of" his forum-related activities. *Dudnikov,* 514 F.3d at 1071 (citing *Burger King Corp.,* 471 U.S. at 472). There must be a causal connection between a plaintiff's alleged injury and the defendant's contact with the forum state—not merely a "loose 'substantial connection.'" *Id.* at 1078-79. Also, the connection must arise out of the *defendant's* acts, not from a third-party's unilateral act. *Id.* at 1074.

The factual basis for Plaintiff's defamation claim rests on Defendant's letters to customer companies advising them of APC's alleged business misrepresentations and breaches of contracts. *See, e.g.,* Compl., ¶¶14, 17. There is no mention of either Rodriguez or the State New Mexico in any of those letters and thus, Defendant's defamation claim does not "arise out of" any conduct related to New Mexico.

In *Shrader v. Biddinger*, the Tenth Circuit considered whether a federal district court in Oklahoma could constitutionally exercise personal jurisdiction over a non-Oklahoma resident with former business dealings in Oklahoma involving the selling of books and materials written by the plaintiff. 633 F.3d 1235, 1237-38 (10th Cir. 2011). After the relationship deteriorated, the defendant sent an email to customers explaining the end of the relationship, which plaintiff alleged was defamatory and was "intended to ruin his professional reputation." *Id.* The Tenth Circuit determined that the federal district court in Oklahoma could not constitutionally exercise personal jurisdiction over the defendant because his known contacts with Oklahoma were not sufficient for

general jurisdiction; and that there was no specific jurisdiction as a result of the emails being sent because they were not expressly aimed at the forum state. *See Shrader,* 633 F.3d at 1245. ("Oklahoma was not the focal point of the email . . . either in terms of its audience or its content").

As Defendant notes, his connections with New Mexico are even more tenuous than those described in *Shrader* because in *Shrader,* the defendant actually had former business dealings in Oklahoma. In this case, all of the matters referenced in the complaint arise out of disputes between two Louisiana companies and not from any business dealings O'Reilly had in the State of New Mexico. Moreover, O'Reilly's letters to customers outside of New Mexico are not sufficient to give rise to specific jurisdiction over him in New Mexico, just as the *Shrader* court found that the defendant's emails sent to customers could not confer jurisdiction in Oklahoma. *Shrader* is persuasive because of the similar fact pattern and supports O'Reilly's argument that the letters sent to customers his lawyer are insufficient to confer personal jurisdiction over O'Reilly.

Plaintiff argues nevertheless that this Court has personal jurisdiction over O'Reilly even though he is a non-resident of New Mexico, relying on *Grano v. Pinnacle Health Facilities XXXIII, LP.* The plaintiff in *Grano* filed a lawsuit against Sagecrest Nursing and Rehabilitation Center in San Miguel, New Mexico, which was then removed to federal court. 2017 WL 4712212 at *1 (D.N.M. Oct. 18, 2017). Defendant Preferred Care, Inc. ("PCI") was a non-resident corporation that provided legal services to the facility. The question in that case was whether PCI provided only "nominal" legal services or whether they were sufficient to confer personal jurisdiction over defendant. The court found that PCI's provision of legal services to the facility were related to regulatory compliance at both the federal and state levels, which meant that they were "more than nominal" and "were essential to the operation of the Sagecrest Center." *Id.* The court concluded that because PCI's vice president signed cost reports to both state and federal governments, PCI

could reasonably foresee that it "could be haled in court in Mexico based upon the certifications of those report." *Id.*

Plaintiff's reliance on *Grano* is misplaced because its operative facts are at odds with this case. The defendant in *Grano,* provided "essential" legal services to business operations in New Mexico that were allegedly negligent, whereas O'Reilly had no business dealings with any New Mexico business. His letters were sent to companies in Texas and Minnesota. Moreover, even if O'Reilly had sent letters to New Mexico companies, those would be insufficient in themselves to satisfy the minimum contacts requirements for specific jurisdiction—just as the Tenth Circuit found the emails were insufficient to confer personal jurisdiction in *Shrader.*

## II.     Due Process / Constitutional Notions of Fair Play and Substantial Justice

Even if Plaintiff could show that Defendant purposefully directed his activities at the forum state and that his alleged injuries arise out of that contact, the Court would still need to "inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Shrader,* 633 F.3d at 1240 (citing *Dudinikov,* 514 F.3d at 1080). While this analysis is unnecessary in light of the Court's findings on general and specific jurisdiction, the inquiry adds another dimension to the Court's final conclusion. Several factors are involved:

- the burden on the defendant,
- New Mexico's interest,
- the plaintiff's interest,
- the interest in an efficient judicial system, and
- the interest in promoting public policy.

The first factor weighs heavily in Defendant's favor. The burden on the defendant of litigating the case in a foreign forum "is of primary concern in determining the reasonableness of personal jurisdiction." *OMI Holdings v. Royal Ins. Co. of Can.,* 149 F.3d 1086, 1095 (10th Cir.

1998). Being hauled into court in New Mexico would be a significant personal and financial burden on O'Reilly, who is a Louisiana resident and claims that he has never been to New Mexico[3].

While the second and third factors appear to weigh more in Plaintiff's favor, the real question is whether Plaintiff may receive "convenient and effective relief in another forum." 149 F.3d at 1097. There is no reason why Plaintiff could not pursue his claims in Louisiana, where O'Reilly is subject to personal jurisdiction, and obtain exactly the same relief if the allegations stated in his complaint are proven true at trial. Having Plaintiff's claims litigated in Louisiana makes even more sense because as mentioned previously, both APC and Forge are already involved in a dispute in the Louisiana lawsuit where APC has brought counterclaims against Forge, O'Reilly's company.

The fourth and fifth factor also weigh in favor of Defendant. Witnesses will already be present in Louisiana for the related lawsuit and these witnesses will undoubtedly be called to testify in the present dispute. These witnesses would be significantly inconvenienced by having to testify in Louisiana and then travel to New Mexico to testify in this case. The only New Mexico witness is Rodriguez and as mentioned previously, the burden on Rodriguez is less important a consideration than the burden on a non-resident defendant. Finally, Louisiana has a strong interest in resolving the underlying dispute between Forge and APC (both Louisiana companies), which is essentially the same dispute on which Plaintiff's claims are based.

Plaintiff does not offer any due process analysis except to respond that exercising personal jurisdiction over O'Reilly in a New Mexico court is "reasonable" because a "vast majority of

---

[3] While O'Reilly's motion and reply allege that he has never been to New Mexico, there's nothing in the form of an affidavit by O'Reilly stating that he has never been to New Mexico. However, Plaintiff does not challenge or take issue with these allegations so the Court is accepting as true O'Reilly's allegation that he's never been to New Mexico.

11

witnesses and evidence" exists in New Mexico and West Texas (which Plaintiff points out is closer to New Mexico than Louisiana), and because Plaintiff and his workers who live in New Mexico are impacted by Defendant's conduct. Doc. 10 at 10. However, Plaintiff completely ignores the existence of the related Louisiana case which the Court finds is seminal when considering notions of "fair play" and "substantial justice."

Thus, even if the Court had found general or specific jurisdiction to exist over O'Reilly, the Court would still find that exercising personal jurisdiction over O'Reilly would offend the concept of basic due process.

### III.   Effect of Pending Discovery Requests

In lieu of presenting any substantive response to the jurisdictional question, Plaintiff suggests that responses to pending discovery requests may uncover facts showing that O'Reilly conducted regular business dealings in New Mexico sufficient to satisfy the requirements of general jurisdiction. Doc. 50 at 7 (" . . . the extent of O'Reilly's conduct of business in New Mexico has not been developed and could very likely reveal that the business he did in New Mexico is sufficient to establish general jurisdiction over O'Reilly"). Plaintiff requests that the Court wait until the pending discovery requests have been answered before ruling on this motion, but the Court finds no good reason to defer ruling.

Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir.1975). However, whether to grant jurisdictional discovery is a matter of discretion for the district court. *Id*. The party seeking jurisdictional discovery bears the burden of demonstrating (1) a legal entitlement to it and (2) how the party would be harmed by a denial of jurisdictional discovery. *Grynberg v. Ivanhoe Energy, Inc.*, 490

F. App'x 86, 103 (10th Cir.2012). *See Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1282–83 (Fed.Cir. 2005) (construing pleadings and affidavits in light most favorable to plaintiff and remanding to district court for jurisdictional discovery where plaintiff made prima facie showing required to defeat motion to dismiss).

Plaintiff fails to show that he is entitled to a deferment in ruling until discovery requests are answered or even that he is entitled to additional discovery, should Plaintiff be tempted to request it. Plaintiff makes no attempt to describe the information being sought in discovery so that the Court may see a potential connection between the pending discovery requests and the jurisdictional issue.[4] The Court therefore finds that Plaintiff's arguments concerning discovery are irrelevant to the jurisdictional issues being addressed in this motion.

## IV.    Venue

Defendant consents to a transfer of this matter to the Eastern District of Louisiana under 28 U.S.C. §1631 rather than dismissal of Plaintiff's claims for lack of personal jurisdiction. The Tenth Circuit has recognized such transfers as a discretionary option under § 1631 that should be considered to cure deficiencies relating to personal jurisdiction. *See Shrader,* 633 F.3d at 1249 (cited in *Trujillo v. Williams,* 465 F.3d 1210, 1222–23 & n. 15 (10th Cir.2006)); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 793 (10th Cir. 1998) (citing *Ross v. Colo. Outward Bound School, Inc.,* 822 F.2d 1524 (10th Cir. 1987) (holding that courts should transfer actions under § 1631 when personal jurisdiction is lacking even though the transferor court has subject matter jurisdiction).

---

[4] Defendant states that "none of Plaintiff's presently propounded discovery makes inquiry about O'Reilly's contacts with New Mexico." Doc. 11 at 11.

The Court finds that transfer of this case is in the best interest of justice under §1631: this Court lacks personal jurisdiction over Defendant and the matter could have been brought in the Eastern District of Louisiana at the time it was filed.

Plaintiff mischaracterizes Defendant's venue argument as a claim that this Court is not the proper venue for this dispute. Defendant's actual position is (1) that this Court lacks personal jurisdiction over O'Reilly; and (2) that venue *would have been proper* in the Eastern District of Louisiana. The Court has found merit in both parts of Defendant's position and believes that Plaintiff would prefer the less harsh option of transfer of venue to outright dismissal of this case.

## CONCLUSION

In sum, the Court finds and concludes that the complaint in this case does not plead facts sufficient to confer personal jurisdiction over Defendant, and that notions of fair play and substantial justice weigh strongly against personal jurisdiction in this matter, even if Defendant had previous contacts with New Mexico.

The Court also finds and concludes that Plaintiff's arguments concerning discovery are irrelevant to the jurisdictional issues being addressed in this motion and Plaintiff has not shown entitlement to a deferment of a ruling on this motion pending responses to discovery requests.

The Court also finds and concludes that transfer of this matter to the Eastern District of Louisiana is in the best interest of justice under 28 U.S.C. §1631.

**IT IS THEREFORE ORDERED** that Defendant's Rule 12(b)(2) Motion to Transfer or in the Alternative, Dismiss **(Doc. 9)** for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED THAT THE CLERK OF COURT IS HEREBY ORDERED TO TRANSFER THIS CASE TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA.**

_____
CHIEF UNITED STATES DISTRICT JUDGE